DARREN RAY HARTSELL, Plaintiff v. RACHEL KATHERINE HARTSELL, Defendant

No. COA07-884

(Filed 4 March 2008)

**1. Appeal and Error— preservation of issues—failure to assign error to sufficiency of evidence**

    The trial court's order in an alimony, child support, and equitable distribution case is reviewed for abuse of discretion taking its findings of fact as conclusively established, because plaintiff failed to assign error to the sufficiency of the evidence to support any specific finding of fact.

**2. Divorce— alimony—sufficiency of findings—additional findings required for amount and duration**

    The trial court did not err by awarding alimony to defendant even though plaintiff contends there was insufficient findings of fact because: (1) findings of fact 3, 4, and 5 address the duration of the marriage, the status of their minor children, and the parties' ages and education levels; (2) findings 8 through 15 and 19 discuss the parties' relative incomes and earning capacities; (3)

findings 16 through 18, 20, 26, and 29 address the parties' expenses, debts, financial obligations, and plaintiff's payments to defendant; (4) finding 21 addresses the parties' standard of living; (5) finding 22 addresses marital misconduct; (6) contrary to plaintiff's contention, findings 16 through 18 articulate the trial court's reasoning in calculating plaintiff's expenses, and the trial court is not required to make findings about the weight and credibility it assigns to the evidence before it; (7) contrary to plaintiff's claim, finding 21 included detailed references to features of the parties' lifestyle; and (8) plaintiff failed to identify any specific pertinent assets, liabilities, or debts that the court erred by failing to discuss. However, the case is remanded for further findings of fact regarding the amount and duration of alimony since the trial court provided no explanation as to why it had concluded that defendant was entitled to $650 per month, nor did it provide any explanation as to its rational for the duration of the award to be until the death or remarriage of defendant.

**3. Child Support, Custody, and Visitation— support—imputing income**

The trial court did not improperly impute income to plaintiff in a child support order without the required findings of fact because: (1) the court's findings of fact expressly calculated plaintiff's income on the basis of his present earnings and not by imputing hypothetical earnings to an unemployed or underemployed parent; (2) the trial court's determination that plaintiff could continue to earn at least $2,500 a month from the grading business was reasonably based on its findings of fact regarding plaintiff's actual earnings during the year prior to the hearing; (3) findings of fact 12 through 14 specifically address the amount plaintiff earned working alone while also teaching, and discussed the availability of work; and (4) contrary to plaintiff's assertion that in finding 14 the trial court stated the testimony about the income from the grading business would be highly speculative, the only potential income source the trial court found speculative was the income plaintiff might earn by renting a truck, which the court did not include in its calculation of plaintiff's income.

**4. Divorce— equitable distribution—distributional factor— conflicting evidence of tax liability**

The trial court did not err by entering an equitable distribution order that distributed the parties' marital property unequally, because: (1) plaintiff identified only one distributional factor that

he contended was mishandled by the trial court, which was the specific dollar amount of the 2004 tax liability that the court distributed to plaintiff; and (2) the trial court addressed this issue in detail in finding of fact 27 and explained that the court was unable to assign an exact dollar amount to the liability since plaintiff had presented conflicting evidence on this issue.

Appeal by Plaintiff from judgments entered 25 April 2007 by Judge Michael G. Knox in Cabarrus County District Court. Heard in Court of Appeals 16 January 2008.

*Hartsell & Williams, P.A., by Christy E. Wilhelm, for Plaintiff-Appellant.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, and Tobias S. Hampson, for Defendant-Appellee.*

ARROWOOD, Judge.

Darren Hartsell (Plaintiff) appeals from the trial court's orders awarding alimony in favor of Rachel Hartsell (Defendant), ordering Plaintiff to pay child support, and ordering equitable distribution of marital and divisible property. We affirm in part and remand in part.

Plaintiff and Defendant were married in 1988 and separated on 23 July 2005. Two children were born of the marriage, sons born in 1991 and 1994. On 17 August 2005 Plaintiff filed a complaint seeking equitable distribution of marital property, and orders determining child custody and child support. September 2005 Defendant filed an answer and counterclaims for child custody and support, alimony and post-separation support, counsel fees, and equitable distribution. In October 2005 Plaintiff filed a reply to Defendant's counterclaims.

Hearings were conducted on the parties' claims on 26 and 27 July 2006, and on 25 August 2006. The trial court entered its first orders for child support, alimony, and equitable distribution on 23 January 2007. Following motions by the parties for relief from judgment and amendment of judgment, the trial court on 25 April 2007 entered amended orders for child support, alimony, and equitable distribution. From these orders Plaintiff appeals.

## Standard of Review

[1] Preliminarily, we note that Plaintiff failed to assign error to the sufficiency of the evidence to support any specific finding of fact.

"Because plaintiff has failed to assign error to any of the trial court's findings of fact, they are binding on appeal." *Langdon v. Langdon*, 183 N.C. App. 471, 475, 644 S.E.2d 600, 603 (2007) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). Accordingly, we review the trial court's orders for abuse of discretion, taking its findings of fact as conclusively established.

Regarding alimony, we observe that Plaintiff does not dispute Defendant's entitlement to alimony. "Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion." *Bookholt v. Bookholt*, 136 N.C. App. 247, 249-50, 523 S.E.2d 729, 731 (1999) (citing *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982)). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998) (internal quotation marks omitted).

Regarding the trial court's order for child support, we note that in determining issues of child support, the "trial court may consider the conduct of the parties, the equities of the given case, and any other relevant facts." *Maney v. Maney*, 126 N.C. App. 429, 431, 485 S.E.2d 351, 352 (1997) (citations omitted). " 'Trial court orders regarding the obligation to pay child support are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion.' " *State ex rel. Gillikin v. McGuire*, 174 N.C. App. 347, 352, 620 S.E.2d 899, 903 (2005) (quoting *Moore Cty. ex rel. Evans v. Brown*, 142 N.C. App. 692, 694-95, 543 S.E.2d 529, 531 (2001) (internal quotation marks and citations omitted)).

Our review of orders for equitable distribution is similarly limited. "In *White v. White*, our Supreme Court set forth 'the proper standard of review of equitable distribution awards' as follows:

Historically our trial courts have been granted wide discretionary powers concerning domestic law cases. The legislature also clearly intended to vest trial courts with discretion in distributing marital property under N.C.G.S. [§] 50-20[.] . . . It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion.

HARTSELL v. HARTSELL

[189 N.C. App. 65 (2008)]

*Stone v. Stone*, 181 N.C. App. 688, 690, 640 S.E.2d 826, 827-28 (2007) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (internal quotation marks and citations omitted)).

[2] Plaintiff first argues that the trial court erred in its order awarding Defendant alimony, on the grounds that the court made "insufficient findings of fact" to support the award.

A trial court's award of alimony is addressed in N.C. Gen. Stat. § 50-16.3A (2007), which provides in pertinent part that in "determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors" including, *inter alia*, the following: marital misconduct of either spouse; the relative earnings and earning capacities of the spouses; the ages of the spouses; the amount and sources of earned and unearned income of both spouses; the duration of the marriage; the extent to which the earning power, expenses, or financial obligations of a spouse are affected by the spouse's serving as custodian of a minor child; the standard of living of the spouses during the marriage; the assets, liabilities, and debt service requirements of the spouses, including legal obligations of support; and the relative needs of the spouses.

In finding of fact twenty-four (24) the trial court states that it considered the statutory factors, including those listed above. However, Plaintiff argues that the court's other findings of fact are insufficient to demonstrate the court's attention to these factors. We disagree, and note that the findings of fact include, in pertinent part, the following:

(3) The parties hereto were married . . . October 8, 1988, . . . and separated on July 23, 2005.

(4) Two (2) children were born of the marriage of the parties . . . [in] 1991, and . . . 1994.

(5) The named minor children . . . have been in the primary physical custody of the defendant since the separation of the parties. The plaintiff is 39 years old and the defendant is 36 years old. The plaintiff has a high school education and the defendant has a college degree.

. . . .

(8) The plaintiff is presently employed as a teacher with the Cabarrus County Schools, having commenced that employ-

ment after the separation of the parties. The plaintiff earned a gross monthly income from teaching during the 2005-2006 school year of $3,890.00 per month . . . for ten months of the year[, and] . . . an annual teacher's supplement of $972.00 for the 2005-2006 school year. In the 2006-2007 school year, the plaintiff will earn a gross monthly income of $4,174.00 per month for ten months.

(9)  Prior to August 2005, the plaintiff had been self-employed as a masonry and grading contractor. The plaintiff sold the masonry business in 2004, but continued to operate the grading business. For several years prior to 2005, the parties had contemplated the plaintiff pursuing a career in teaching. In 2005, prior to the separation, . . . [the parties] discussed, planned and agreed . . . [that] plaintiff would teach while continuing to operate his grading business[.] . . . [P]laintiff represented to Defendant . . . that he could earn $30,000.00 to $50,000.00 per year in addition to his teaching income. . . .

(10) The plaintiff testified he "did not have a clue how much money he made from the grading business in 2004." The income tax return of the parties for 2003 showed wages for the plaintiff from his business of approximately $32,150.00 (see Defendant's 1 from ED trial) and other profit income of $43,073.00. The profit income was reduced from approximately $66,000.00 by the election of '179 expenses' (depreciation) of $23,500.00. The masonry business was closed in 2004. It is unclear what percentage was from the masonry business and what percentage was from the grading business.

(11) Neither the business nor the personal income tax returns for 2004 or 2005 were proffered to the Court. The bank account records of the masonry business from January 2004 through August 2005 show total deposits of $403,718.58 (see Defendant's 10). Payments to or for the benefit of the plaintiff from the masonry business account for the period from April 2004 through August 2005 were $71,727.82. The plaintiff also paid many personal expenses from the business account including health, airplane and car insurance, cell phones, gasoline for the parties, automobile repairs, and property taxes. Both parties benefitted from these payments.

(12) The plaintiff had income from the grading business from the date of separation through December 31, 2005 of $39,389.33 (Defendant's 7). The business income included the sale of a truck for $12,000.00. The remaining income of $27,389.33 came from the operation of the grading business by the plaintiff while he was employed full-time as a teacher. The average monthly income for this period of five months and eight days was $5,217.02. From this income the plaintiff paid living expenses, some finances to defendant, and reduced the monthly debt of the parties. The expenses that the Court attributes to the business during this period are $13,241.63 or $2,522.22 per month. The net monthly income of the grading business during this period, after expenses, was $2,694.80.

(13) Through July 2006 the plaintiff earned $13,847.00 in income from the grading business. Despite the availability of the plaintiff during the summer months when school is closed, the plaintiff has earned only $4,210.00 in June and July of 2006.

(14) Sammy Flowe of S.J. Flowe Grading Company who has worked with Plaintiff in the past, testified that grading work is available and that the 643 Caterpillar loader owned by the plaintiff has a rental value of $5,000.00 to $6,000.00 per month. He also testified that the loader could be operated by an employee and earn a net monthly income after expenses of $3,000.00 per month. The truck owned by the plaintiff would also have rental and income value. However, income from this source would be highly speculative.

(15) The plaintiff is capable of earning income with the grading business and has demonstrated that ability. The income of $2,694.80 per month earned by the grading business in the last five months of 2005 is representative of the earning capacity of the plaintiff in that business while continuing his employment as a teacher. The Court finds that Plaintiff has the present ability and capacity to earn at least $2500.00 per month from the grading business based upon his past income. The total monthly gross income of the plaintiff from his employment as a teacher for twelve months and from the operation of the grading business was $5741.00 prior to August 2005 and $5978.00 after August 2005.

(16) The plaintiff filed a financial affidavit with the Court at the time of the filing of the Complaint. The plaintiff, however, . . . presently does not have any expense for rent or electricity. Plaintiff has made efforts to reduce his living expenses in order to pay on the parties' marital debt and has been paying one-half of the mortgage payment since February 2006. It is reasonable to find that Plaintiff will have some expense for housing. The income and expense records indicate the plaintiff is paying approximately $300.00 per month for credit card accounts. The gasoline, insurance and repairs for his vehicle have been paid through the business. The plaintiff offered no other evidence as to his expenses at the hearing of this matter. From the affidavit of the plaintiff and the evidence presented by the plaintiff, the Court finds the plaintiff's reasonable monthly expenses, to be as follows:

Food: $250.00; Clothing: 100.00; Telephone 50.00; Medical: 25.00; Education: 75.00; Grooming: 20.00; Recreation and Entertainment: 100.00; Laundry: 25.00; Life Insurance: 175.00; Credit Cards: 300.00; Rent: 500.00; Gifts: 25.00; Electricity: 100.00; Total: $1,745.00

The Plaintiff testified that he had always paid many living expenses through the grading business and the records reflect such, thus the Court will not consider expenses already paid through the business.

(17) That from the date of separation through January 2006 the plaintiff paid the following sums to the defendant: . . . Total $ 13,151.03

(18) Beginning in February 2006 the plaintiff paid to the defendant the sum of $450.00 per month as support for the minor children and $1,163.00 per month representing one-half of the mortgage payment and escrows for the former marital residence.

(19) The defendant is employed as a teacher[,and has] . . . national teacher certification for which she receives additional income[.] . . . The gross monthly income of the defendant for ten months in 2005-2006 was $4,214.00. The net income of the defendant is $2,784.82 for. ten months

which for twelve months is $3,511.66 gross and $2,321.00 net. Defendant's gross pay for 2006-2007 will be $4,425.00 per month for ten months.

(20) The defendant has filed an affidavit with the Court and testified as to the expenses contained in the affidavit. The reasonabl[e] monthly expenses for the defendant to maintain the lifestyle to which she had become accustomed are as follows:

House payment: 2,326.00; Electricity: 300.00; Heat: 25.00; Water: 40.00; Cable TV: 100.00; Telephone: 100.00; House Maintenance: 100.00; Gasoline: 300.00; Car repairs: 50.00; Car insurance: 84.00; Groceries: 150.00; Religious contributions: 200.00; Medical expenses: 25.00; Clothing: 75.00; Grooming: 40.00; Laundry: 20.00; Entertainment: 100.00; Christmas Gifts: 100.00; Subscriptions: 10.00; Life Insurance: 45.00; Car registration/other: 10.00; Vacations: 100.00; Pets: 30.00; Alarm system: 20.00;

Total: $ 4,350.00

(21) During the marriage of the parties, the parties enjoyed a comfortable lifestyle, but lived beyond their means. The parties frequently traveled to the beach. The defendant resided in a large home with the plaintiff and the children. The home was located near the defendant's parents. The minor children participated in many activities, in school, the community, and the church. The parties kept a standard of living much higher than they could afford.

(22) The plaintiff committed acts of marital misconduct, including illicit sexual behavior during the marriage and prior to the separation of the parties.

(23) The defendant is a dependent spouse in that she is substantially in need of maintenance and support from the other spouse.

. . . .

(25) Considering the factors listed above, the plaintiff is the supporting spouse, and has the means and ability to contribute the amount of $650.00 to the maintenance and support of the defendant.

(26) The minor children are covered by health insurance provided by the plaintiff through his employment at a monthly cost of $240.22.

(27) The child support obligation for the plaintiff to the defendant based upon the 2002 Child Support Guidelines, the guidelines in place at the time of the hearing, would be $773.00 per month.

(28) The plaintiff has the means and ability to pay child support in accordance with the North Carolina Child Support Guidelines.

(29) That from August 2005 to February 2006 the plaintiff paid to the defendant the sum of $2,000.00 each month, designated as 'mortgage/child support', except during August 2005, when $2,300.00 was paid. The Court is unable to determine any arrearage in child support during this period. From February 2006 to present the plaintiff paid the defendant child support of $450.00 per month. The plaintiff has accrued an arrearage from February 1, 2006 through January, 2007 of $323.00 per month for a total of $3,876.00.

As discussed above, the trial court's findings of fact are conclusively established on appeal. Findings of fact three (3), four (4), and five (5) address the duration of the marriage, the status of their minor children, and the parties' ages and education levels. The parties' relative incomes and earning capacities are set out in findings of fact eight (8) through fifteen (15), and in finding of fact nineteen (19). Their expenses, debts, financial obligations, and Plaintiff's payments to Defendant are discussed in findings of fact sixteen (16) through eighteen (18) and in findings of fact twenty (20), twenty-six (26), and twenty-nine (29). Their standard of living is detailed in finding of fact twenty-one (21). Marital misconduct is addressed in finding of fact twenty-two (22). We conclude that the trial court's findings of fact were more than sufficient to demonstrate the court's consideration of the statutory factors.

We have considered and rejected Plaintiff's arguments to the contrary. For example, Plaintiff argues that the trial court erred in its calculation of the parties' expenses, on the grounds that the court improperly adopted "wholesale" the expenses Defendant listed in her affidavit, but made changes to the expenses in Plaintiff's affidavit

"without explanation, justification or reason." Findings of fact sixteen (16) through eighteen (18) do articulate the trial court's reasoning in its calculation of Plaintiff's expenses. Moreover, the trial court is not required to make findings about the weight and credibility it assigns to the evidence before it. "Where trial is by judge and not by jury, . . . [the] trial judge acts as both judge and jury and considers and weighs all the competent evidence before him. If different inferences may be drawn from the evidence, the trial judge determines which inferences shall be drawn and which shall be rejected. . . . The logic behind this approach is clear. In this setting, the trial judge is better able than we at the appellate level to gauge the comportment of the parties throughout trial and to discern the sincerity of their responses to difficult questions." *In re Estate of Trogdon*, 330 N.C. 143, 147-48, 409 S.E.2d 897, 900 (1991) (citation omitted).

Similarly unavailing is Plaintiff's claim that the trial court "made no specific findings" about the parties' standard of living. Finding of fact twenty-one (21) includes detailed references to features of the parties' lifestyle. Plaintiff also asserts that the court's findings fail to consider any reduction of Defendant's expenses in order to "keep the parties living within their means." In finding of fact twenty (20) the court enumerates Defendant's living expenses in detail. We conclude that the listed expenses represent a modest lifestyle, and that the court did not abuse its discretion in calculating Defendant's living expenses. The Plaintiff also makes a generalized assertion that the trial court inadequately addresses the assets, liabilities, or required contributions to debt distributed in the Amended Order for equitable distribution. However, Plaintiff fails to identify any specific pertinent assets, liabilities, or debts that the court erred by failing to discuss.

The Plaintiff next contends that the court erred by failing to justify its decisions about the amount and duration of its award of alimony. N.C. Gen. Stat. § 50-16.3A(b) (2007) directs that the court "shall exercise its discretion in determining the amount, duration, and manner of payment of alimony. The duration of the award may be for a specified or for an indefinite term." Decisions about the amount and duration of alimony are made in the trial court's discretion, and the court is not required to make findings about the weight and credibility it assigned to evidence before it. *See Ingle v. Ingle*, 42 N.C. App. 365, 368, 256 S.E.2d 532, 534 (1979). However, based upon this Court's decisions in *Williamson v. Williamson*, 140 N.C. App. 362, 536 S.E.2d 337 (2000), *Fitzgerald v. Fitzgerald*, 161 N.C. App. 414, 588 S.E.2d

517 (2003), and *Squires v. Squires*, 178 N.C. App. 251, 631 S.E.2d 156 (2006), we must remand to the trial court for further findings of fact regarding the amount and duration of alimony.

In *Williamson*, the Court first pointed out that "N.C. Gen. Stat. § 50-16.3A(c) (1995) requires the trial court, in making an alimony award, to set forth 'the reasons for its amount, duration, and manner of payment.' "[1] *Id.* at 365, 536 S.E.2d at 339. The Court remanded to the trial court for further findings because its alimony order "failed to provide any reasoning for the $1,500.00 monthly amount, why the award was permanent, or why it would be paid directly to the Union County Clerk of Court." *Id.*

In *Fitzgerald*, this Court specifically held: "[T]he trial court is also required to set forth the reasons for the amount of the alimony award, its duration, and manner of payment." 161 N.C. App. at 421, 588 S.E.2d at 522. The Court then pointed out that "[t]he trial court, however, did not make required findings as to the reasons for making the duration of the alimony continuous until defendant dies, remarries, or cohabits, and why it is to be paid directly to the Clerk of Superior Court." *Id.* As a result, the Court held, citing *Williamson* as controlling precedent, that it was bound "to remand the alimony portion of the order to the trial court to make further findings of fact explaining its reasoning for the duration of the alimony award and its manner of payment." *Id.* at 422, 588 S.E.2d at 523.

Similarly, in *Squires*, the trial court had ordered alimony to "continue until the death of one of the parties, or plaintiff's remarriage or cohabitation, but failed to make any finding about the reasons for this duration." 178 N.C. App. at 264, 631 S.E.2d at 163. This Court "remand[ed] for further findings of fact concerning the duration of the alimony award." *Id.*

Here, the trial court in almost identical fashion ordered the payment of alimony in the amount of $650.00 per month "until the death or remarriage of the defendant." With respect to the $650.00, the trial court made only a finding that plaintiff had the ability to pay that amount, but provided no explanation as to why it had concluded that defendant was entitled to that specific amount. Further, the trial court included no findings of fact at all to explain its rationale for the duration of the award. Accordingly, *Williamson*, *Fitzgerald*, and *Squires* mandate that we remand for

---

1. The current version of the statute is identical.

further findings of fact regarding the basis for the amount and duration of the alimony award.

---

[3] Plaintiff next argues that the trial court's order for child support improperly "imputed income to the Plaintiff" without the required findings of fact. We disagree.

Under N.C. Gen. Stat. § 50-13.4(c) (2007), the trial court "shall determine the amount of child support payments by applying the presumptive guidelines" in the North Carolina Child Support Guidelines (the guidelines), which define income as "a parent's actual gross income from any source, including but not limited to income from employment or self-employment[.]" "Ordinarily, gross income for self-employed individuals is determined under the North Carolina Child Support Guidelines, AOC-A-162, Rev. 10/02, as 'gross receipts minus ordinary and necessary expenses required for self-employment[.]' " *Ford v. Wright*, 170 N.C. App. 89, 99, 611 S.E.2d 456, 462 (2005).

"It is well established that child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified." *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997) (citation omitted). "Capacity to earn, however, may be the basis of an award if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support for his wife and children." *Beall v. Beall*, 290 N.C. 669, 674, 228 S.E.2d 407, 410 (1976). Thus, "a showing of bad faith income depression by the parent is a mandatory prerequisite for imputing income to that parent." *Sharpe v. Nobles*, 127 N.C. App. 705, 706, 493 S.E.2d 288, 289 (1997).

In the instant case, the unchallenged findings of fact establish the following regarding Plaintiff's income:

1. Prior to the parties' separation, Plaintiff earned income as a self-employed masonry and grading contractor. In 2004 Plaintiff closed the masonry part of his business. After the parties separated, Plaintiff continued to earn income as a self-employed grading contractor.

2. For several years before their separation, the parties planned for Plaintiff to take a second job as a high school teacher, while continuing to operate the grading business part time.

3. After the parties separated Plaintiff began working as a high school teacher.

4. After Plaintiff started teaching school, he continued to operate his grading business. At the time of the hearing, he was employed as a teacher, and also earning income from the grading business. Plaintiff paid many personal expenses from his business account.

5. Employment was available in the grading business at the time of the hearing.

6. Plaintiff failed to provide income tax returns for 2004 or 2005.

In addition, the court's findings state the dollar amounts of the following: Plaintiff's teaching salary for the pertinent calendar years; the amount Plaintiff represented that he could earn as a full time teacher and part-time grading contractor; the amount deposited into Plaintiff's business account before and after the parties' separation; and the amount of Plaintiff's income from the grading business during the twelve months after the parties separated, while Plaintiff was also teaching school full time. These figures show that during the first year after the parties separated, Plaintiff's income from the grading business was approximately $39,400 including the sale of a truck for $12,000, or $27,400 excluding the truck sale, yielding an average monthly income of $3,280 including the truck sale or $2,280 if it is excluded.

Regarding income earned by Plaintiff from the sale of a truck from his grading business, Plaintiff does not argue that this should be excluded from his income, and case law suggests that the trial court could properly consider it. In *Burnett v. Wheeler*, 128 N.C. App. 174, 493 S.E.2d 804 (1997), the appellant argued that the trial court had improperly imputed income to him. This Court held:

Judge Foster did not 'impute' an income of $77,000 to defendant. . . . When setting child support and determining the defendant's gross income, it is appropriate to consider all sources of income along with the defendant's earning capacity. *See* North Carolina Child Support Guidelines. The trial court found . . . defendant had retirement accounts which totaled $722,384 and . . . stocks and land valued at $60,000 and $74,000, respectively. . . . [T]he trial court did not abuse its discretion in considering all of defendant's available sources of income in

arriving at his gross income. We find that the trial court did not impute an income to defendant[.]

*Burnett,* 128 N.C. App. at 177, 493 S.E.2d at 806.

Nor does the trial court's mere use of the phrases "earning capacity" or "past income" automatically transform the order into one that "imputes" income to Plaintiff. In the instant case, the court's findings of fact expressly calculate Plaintiff's income on the basis of his present earnings, and not by imputing hypothetical earnings to an unemployed or underemployed parent. Finding of fact fifteen (15) might best be read as stating that "Plaintiff has the present ability and capacity to [continue to] earn at least $2,500.00 per month from the grading business[.]" *See, e.g., Diehl v. Diehl,* 177 N.C. App. 642, 630 S.E.2d 25 (2006) (trial court did not "impute" income to appellant when it averaged his 2001 and 2002 to determine his 2003 income).

We conclude that the trial court's determination that Plaintiff could continue to earn at least $2,500 a month from the grading business, was reasonably based on its findings of fact regarding Plaintiff's actual earnings during the year prior to the hearing. We have considered and rejected Plaintiff's arguments to the contrary.

Plaintiff asserts that the court's findings about Plaintiff's income from the grading business "failed to include the fact that plaintiff's full-time job responsibilities had changed, that plaintiff's previous income was based upon his having a crew of full-time workers in addition to himself, and that there may be periods when work was unavailable to him." We disagree, and note that findings of fact twelve (12) through fourteen (14) specifically address the amount Plaintiff earned working alone while also teaching, and discuss the availability of work.

Plaintiff also argues that "in finding of fact #14 [the court] stated that the testimony about the income from the grading business 'would be highly speculative.'" This contention, that the court found that income "from the grading business" to be "highly speculative" mischaracterizes the trial court's finding. The only potential income source that the trial court found speculative was the income Plaintiff might earn by renting a truck, which the court did not include in its calculation of Plaintiff's income.

*Glass v. Glass,* 131 N.C. App. 784, 509 S.E.2d 236 (1998) cited by Plaintiff, is easily distinguished from the instant case. In *Glass,* the Defendant produced evidence of a decrease in income caused by cir-

**N.C. STATE BAR v. KEY**

[189 N.C. App. 80 (2008)]

cumstances beyond his control. Notwithstanding this evidence, and without any factual basis, the trial court found that Defendant would have increased income in the future. In contrast, the trial court herein based its conclusions on detailed findings of fact on Defendant's actual income. This assignment of error is overruled.

[4] The Plaintiff also argues that the trial court erred by entering an order for equitable distribution that distributed the parties' marital property unequally, on the grounds that the order was "not supported by adequate findings of fact or appropriate consideration of the statutory distributional factors." We disagree.

Plaintiff identifies only one distributional factor that he contends was handled improperly by the trial court—the specific dollar amount of the 2004 tax liability that the court distributed to Plaintiff. However, in finding of fact twenty-seven (27) the court addressed this issue in detail, and explained that because Plaintiff had presented conflicting evidence on this issue, the court was unable to assign an exact dollar amount to the liability. This assignment of error is overruled.

We have considered Plaintiff's other arguments and conclude they are without merit. For the reasons discussed above, the trial court's orders for alimony, child support, and equitable distribution are

Affirmed in part and Remanded in part.

Judges ELMORE and GEER concur.