STROUD, Judge.
 

 *421
 
 Plaintiff-husband appeals the trial court's order awarding alimony to defendant-wife. Because the trial court's findings of fact are supported by the evidence, the conclusions of law are supported by those findings, and the trial court did not abuse its discretion in setting the alimony term and duration, we affirm.
 

 I. Background
 

 In 1999, plaintiff Husband and defendant Wife were married; they separated on 8 August of 2014. On 21 August 2014, Husband filed a
 
 *422
 
 verified complaint for equitable distribution and a motion for a temporary restraining order and injunctive relief alleging Wife was removing antiques and other personal property from the former marital home and should be enjoined from such malfeasance. On 3 September 2014, Wife answered Husband's complaint, denying allegations of wrongdoing and counterclaiming for postseparation support, permanent alimony, equitable distribution, and attorney fees. On 2 October 2014, Husband filed a verified reply to Wife's answer and counterclaims and alleged that Wife "committed acts of marital misconduct[;]" Husband characterized the wrongdoing as financial in nature.
 

 On 2 February 2015, the trial court entered an order for postseparation support requiring Husband to pay Wife $2,000 a month. On 25 July 2016, the trial court entered a judgment and order on equitable distribution; this order was not appealed. On 16 September 2016, the trial court entered a Qualified Domestic Relations Order ("QDRO") which was also not appealed.
 

 The trial court held a hearing on Wife's alimony claim on 9 September 2016 and on 31 July 2017, the trial court entered an order awarding Wife alimony and attorney fees. The trial court determined Husband had committed acts of martial misconduct, including illicit sexual behavior. Husband was ordered to pay wife $2,780 per month for 10.5 years and attorney fees. Husband timely filed notice of appeal.
 

 II. Alimony Order
 

 Husband challenges findings of fact made by the trial court and the trial court's ultimate determination of the amount and term of alimony.
 

 Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. An abuse of discretion has occurred if the decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.
 

 Dechkovskaia v. Dechkovskaia
 
 ,
 
 232 N.C. App. 350
 
 , 356,
 
 754 S.E.2d 831
 
 , 836 (2014) (citations omitted).
 

 *423
 
 A. Findings of Fact
 

 Husband challenges nine findings of fact as unsupported by competent evidence; we first consider each of the nine challenged findings of fact.
 

 1. Foster Children
 

 The trial court found in finding of fact 7 that "[d]uring the marriage the parties[ ] provided foster care to numerous children, and as of the date of separation, the parties w[ ]ere the primary caretakers and sole financial provider for two minor children, both
 
 *429
 
 of who[m] have remained with the [Wife], who has been solely responsible for their financial care." Husband argues this finding is not supported by the evidence because the evidence actually showed that the children's father cares for them on weekends and they receive Medicaid for medical expenses, so Wife is not "
 
 solely
 
 responsible" for the children. (Emphasis added.) Wife responds that the parties had taken in about fifteen foster children at various times during their marriage, including the two children still living with Wife as of the date of separation. Wife testified they had taken full financial responsibility for them, including providing uninsured medical costs if the children's biological father allowed Medicaid to lapse. Since the parties separated, Wife had been solely responsible for the children; in other words, Husband had not been assisting financially with the foster children as he did while the parties were together.
 

 Husband misconstrues this finding as saying that Wife receives absolutely no assistance from any other source in supporting the children. But the trial court was not addressing all of the financial circumstances of the foster children in this order; it was addressing the financial situation of Husband and Wife. Husband's argument ignores the first part of the finding, which is that prior to their separation,
 
 he and Wife
 
 were the "sole financial provider" for the children, but after the separation, Wife had been the sole provider. Further, the evidence showed that since Husband and Wife separated, Wife has been caring for the children without Husband's involvement or financial assistance, so the finding is supported by competent evidence. Even if the wording of finding 7 could have been more exact, the meaning is clear.
 
 See, e.g.,
 

 In re S.W.
 
 ,
 
 175 N.C. App. 719
 
 , 723,
 
 625 S.E.2d 594
 
 , 597 (2006) ("A review of the record reveals that there is competent evidence to support findings of fact numbers 4, 6 through 17 and 19 as these findings of fact are admitted to in respondent's answer, if not in exact form, at least in substance."). This argument is overruled.
 

 *424
 
 2. Marital Misconduct
 

 Husband next challenges finding of fact 11(a) and (b) which address his marital misconduct:
 

 11. Plaintiff has committed acts of marital misconduct, which include the following:
 

 a. Plaintiff engaged in acts of illicit sexual behavior prior to the parties separation. Plaintiff had the inclination and opportunity and had in fact committed adultery with [Sue Smith].
 
 [1]
 

 b. Prior to the parties' separation, Plaintiff offered indignities that rendered Defendant's condition intolerable and her life burdensome, due to him acting on his adulterous relationship and Defendant becoming aware of that adultery prior to separation. Specifically, Defendant found Plaintiff kissing [Sue Smith] in a parked vehicle in Greenville prior to separation.
 

 Husband argues there was not sufficient evidence to support finding 11 because there was not definitive proof he engaged in any type of sexual activity with Ms. Smith. Husband contends that the evidence of his inclination and opportunity to commit illicit sexual behavior with Ms. Smith or offer indignities was not sufficient and evidence of his behavior and statements during the marriage which Wife interpreted as indications of his infidelity, are not sufficient. Husband characterizes the evidence as "[c]ar rides and phone calls" that "can only rise to the level of mere conjecture[.]" Husband specifically argues there is no direct evidence of "sexual intercourse, sexual acts, or sexual contact."
 

 It is well-established that direct evidence of illicit sexual behavior or indignities as a result of that behavior is not required but can be shown by circumstantial evidence:
 

 Where adultery is sought to be proved by circumstantial evidence, resort to the opportunity and inclination doctrine is usually made. Under this doctrine, adultery is presumed if the following can be shown: (1) the adulterous disposition, or inclination, of the parties; and (2) the opportunity created to satisfy their mutual adulterous inclinations.
 

 *430
 

 *425
 
 Thus, if a plaintiff can show opportunity and inclination, it follows that such evidence will tend to support a conclusion that more than mere conjecture exists to prove sexual intercourse by the parties.
 

 Coachman v. Gould
 
 ,
 
 122 N.C. App. 443
 
 , 447,
 
 470 S.E.2d 560
 
 , 563 (1996) (citation and quotation marks omitted).
 

 The evidence at trial included a private investigator ("PI") who testified that on 6 August, before separation, she witnessed and photographed Husband kissing Ms. Smith. The investigative report, admitted as an exhibit, shows that the investigator parked near Husband's truck in the parking lot of a shopping mall at 1:09 p.m. and waited until 3:45 p.m., when Husband and Ms. Smith arrived, and Ms. Smith parked her car next to Husband's truck. Husband and Ms. Smith kissed. Husband then got into his own truck, and both vehicles left at the same time. Thereafter, on 18 and 19 August, two nights in a row only ten days after the parties' separation, the PI saw Husband's and Ms. Smith's vehicles parked overnight at a hotel. Although the overnight stays at the hotel were shortly after the parties separated, "[n]othing herein shall prevent a court from considering incidents of post date-of-separation marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation[.]"
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(1) (2015).
 

 Furthermore, Wife testified that prior to their separation Husband began to repeat specific suspicious behaviors he exhibited in 2011 when he had a prior affair; these actions prompted her to hire the PI. For example, Husband failed to come home one night. Wife also saw Husband and Ms. Smith together, including at Husband's temporary residence, shortly after the date of separation, and when Wife confronted the Husband about the other woman, he said, "she was a better woman than" Wife. We conclude there was competent evidence to support finding of fact 11(a) and (b). This argument is overruled.
 

 3. Retirement Income
 

 Defendant next challenges finding of fact 16 which states, "The Plaintiff has significant funds upon which he can enjoy upon retirement based on Plaintiff's employment. The Defendant has little to no independent source of retirement income, but did receive a portion of the Plaintiff's retirement in the Order for Equitable Distribution." Husband contends there was no evidence of the value of his retirement account before the trial court "at the time of the trial." But Husband testified quite extensively about his 401K account, including the large sums he
 
 *426
 
 had removed from the account. Husband does not dispute that Wife had no retirement savings other than the portion of Husband's retirement she received in their equitable distribution. The trial court did not find an exact amount of Husband's retirement but rather noted the funds were "significant" due to his income and continuing contributions. The trial court found uncontested, and thus binding, that Husband's monthly income was $10,471.94 while Wife's monthly income was $2,772.08.
 
 See generally
 

 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). While there was some confusion around how much Husband currently deposits to his 401K, he does make deposits which his employer matches. The trial court need not find a specific value for the parties' retirement accounts for purposes of alimony. Finding 16 is simply a comparison of "[t]he relative assets and liabilities of the spouses" as required under North Carolina General Statute § 50-16.3A(b)(10).
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(10) (2015). There was competent evidence to support finding 16, so this argument is overruled.
 

 4. Reasonable Expenses
 

 Husband next contests two findings of fact determining the parties' reasonable expenses and relative financial needs.
 

 a. Husband's Expenses
 

 Husband specifically contests that his reasonable expenses are $1,675.00 because his financial affidavit alleged a higher sum. Husband argues that the trial court accepted Wife's expenses as stated on her
 
 *431
 
 financial affidavit but did not accept his. But the trial court can accept or reject the alleged expenses on any financial affidavit, based upon its evaluation of the credibility of the evidence and the reasonableness of the expenses alleged.
 
 See
 

 Burger v. Burger
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 683
 
 , 687 (2016) ("This Court has long recognized that the determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves." (citation, quotation marks, and brackets omitted) ). There was extensive testimony about the expenses, and during the hearing, Husband's attorney agreed Husband's recurring monthly expenses were $1,675.00. The trial court has discretion to determine reasonable expenses.
 
 See generally
 

 Kelly v. Kelly
 
 ,
 
 167 N.C. App. 437
 
 , 445,
 
 606 S.E.2d 364
 
 , 370 (2004) (noting trial court has discretion to determine reasonable expenses). Findings of fact 18(a)(i) and 19 were supported by competent evidence. This argument is overruled.
 
 *427
 
 b. Wife's Expenses
 

 Husband next contests the findings that Wife's reasonable expenses are $5,745.84 a month. Husband makes separate arguments as to the determination of Wife's reasonable expenses. Husband first takes issue with the trial court relying on Wife's financial affidavit for its calculations noting various bits of testimony about various individual expenses and contending that the trial court should have found lower amounts than those stated on Wife's affidavit. During trial, the trial court thoroughly considered Wife's financial affidavit as evidence of her reasonable expenses and needs; the affidavit is competent evidence.
 
 See
 

 Parsons v. Parsons
 
 ,
 
 231 N.C. App. 397
 
 , 399,
 
 752 S.E.2d 530
 
 , 533 (2013) ("Plaintiff primarily contends that the trial court's findings of fact on defendant's expenses were erroneous because the financial affidavit presented by defendant, on which the trial court largely based its findings regarding defendant's income and expenses, was unsupported by other evidence. Plaintiff fails to recognize that the affidavit itself is evidence of defendant's expenses.")
 

 Husband next contends that "reasonable expenses" and "relative financial needs" cannot be the same number -- here, both were $5,745.84 -- although he cites no authority for this contention. Under North Carolina General Statute § 50-16.3A(b)(13), the trial court must consider "[t]he relative needs of the spouses[.]"
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(13) (2015). The term "relative" is an adjective describing "needs of the spouses[.]"
 

 Id.
 

 In the context of North Carolina General Statute § 50-16.3A(b), the term "relative" is used simply to direct a comparison of the expenses of the husband and the wife.
 
 [2]
 
 We see no reason the "relative financial need" of Wife must differ from her "reasonable expenses." Instead, in most cases, the terms "relative financial need" and "reasonable expenses" probably will be the same. The trial court's calculation of Wife's need for alimony is clear, whether the number is called "reasonable expenses" or "relative financial needs":
 
Wife's expenses (or "relative financial needs") $5745.84 Wife's income -$2772.08 Deficit (alimony award) $2973.76

 *428
 
 The meaning of the trial court's finding is
 
 *432
 
 clear, and the evidence supports the amounts stated in the findings of fact. This argument is overruled.
 

 Husband also contends Wife's expenses for foster children, grandchildren, and nieces and nephews are not reasonable expenses because Wife has no legal financial obligation for the foster children or her relatives in the same manner as a parent would have a legal obligation to support her own child. But the question here is not Wife's legal obligation to support the children; it is the parties' accustomed standard of living during the marriage as our Supreme Court has established that the accustomed standard of living is based upon the parties' lifestyle during the marriage and not just economic survival:
 

 We think usage of the term accustomed standard of living of the parties completes the contemplated legislative meaning of maintenance and support. The latter phrase clearly means more than a level of mere economic survival. Plainly, in our view, it contemplates the economic standard established by the marital partnership for the family unit during the years the marital contract was intact. It anticipates that alimony, to the extent it can possibly do so, shall sustain that standard of living for the dependent spouse to which the parties together became accustomed. For us to hold otherwise would be to completely ignore the plain language of G.S. 50-16.5 and the need to construe our alimony statutes
 
 in pari materia
 
 . This we are unwilling to do.
 

 Williams v. Williams
 
 ,
 
 299 N.C. 174
 
 , 181,
 
 261 S.E.2d 849
 
 , 855 (1980).
 

 The evidence showed that "the economic standard established by the marital partnership for the family unit during the years the marital contract was intact" included caring for about fifteen foster children over the years as well as generosity to relatives.
 

 Id.
 

 For some families, the "economic standard[,]"
 

 id.
 

 , and lifestyle established during the marriage includes expenses for golf, vacations, boats, hobbies, and entertainment, and these types of expenses can be included as part of the reasonable expenses for purposes of alimony.
 
 See, e.g.
 
 ,
 
 Rhew v. Felton
 
 ,
 
 178 N.C. App. 475
 
 , 484,
 
 631 S.E.2d 859
 
 , 865-66 (2006). For example, in
 
 Rhew
 
 , this Court determined the trial court properly considered evidence of the parties' "standard of living" during the marriage, which included frequent travel and "major vacations" to "Canada, New Orleans, Hawaii and Cancun"; ["a boat they used regularly[;]" contributions to their church; playing golf; "arts, crafts and making jewelry[;]"
 

 *429
 
 going "out every Friday evening[;]" going dancing and to movies; going out to "lunch every Sunday[;]" entertaining friends in their home; and engaging "the services of a housekeeper."
 

 Id.
 

 Here, instead of pursuing expensive leisure activities, Husband and Wife established a lifestyle of caring for foster children; this economic choice is certainly worth at least the same consideration as golf and vacations. The trial court did not abuse its discretion by including these expenses in Wife's needs. The arguments as to Wife's reasonable expenses are overruled.
 

 5. Monthly Surplus
 

 Husband also challenges the determination that he has a monthly surplus of $8,796.94. Since we have already determined the underlying findings of fact were supported by competent evidence, this number is simply the mathematical result of those findings, so we need not address this argument further. This argument is overruled.
 

 B. Alimony Amount and Duration
 

 Husband next contends that the trial court erred in setting alimony, but his only argument is again challenging the same findings of fact, and thus we need not re-address those issues. Husband then challenges the trial court's determination that he has the ability to pay alimony and the duration of the alimony. Again, the findings of fact based on competent evidence show that Husband has $8,796.94 of excess income so he has the ability to pay in alimony. Lastly, Husband contends the trial court did not make adequate findings of fact to support the duration of alimony for 126 months.
 

 North Carolina General Statute § 50-16.3A(b) sets out the factors the trial court
 
 *433
 
 should use to determine the "Amount and Duration" of alimony:
 

 The court shall exercise its discretion in determining the amount, duration, and manner of payment of alimony. The duration of the award may be for a specified or for an indefinite term. In determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors, including:
 

 (1) The marital misconduct of either of the spouses. Nothing herein shall prevent a court from considering incidents of post date-of-separation marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation;
 

 *430
 
 (2) The relative earnings and earning capacities of the spouses;
 

 (3) The ages and the physical, mental, and emotional conditions of the spouses;
 

 (4) The amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;
 

 (5) The duration of the marriage;
 

 (6) The contribution by one spouse to the education, training, or increased earning power of the other spouse;
 

 (7) The extent to which the earning power, expenses, or financial obligations of a spouse will be affected by reason of serving as the custodian of a minor child;
 

 (8) The standard of living of the spouses established during the marriage;
 

 (9) The relative education of the spouses and the time necessary to acquire sufficient education or training to enable the spouse seeking alimony to find employment to meet his or her reasonable economic needs;
 

 (10) The relative assets and liabilities of the spouses and the relative debt service requirements of the spouses, including legal obligations of support;
 

 (11) The property brought to the marriage by either spouse;
 

 (12) The contribution of a spouse as homemaker;
 

 (13) The relative needs of the spouses;
 

 (14) The federal, State, and local tax ramifications of the alimony award;
 

 (15) Any other factor relating to the economic circumstances of the parties that the court finds to be just and proper.
 

 (16) The fact that income received by either party was previously considered by the court in determining the value of a marital or divisible asset in an equitable distribution of the parties' marital or divisible property.
 

 N.C. Gen. Stat. § 50-16
 
 .3A(b) (2015).
 

 *431
 
 Finding of Fact 5 states:
 

 The Court has considered the financial needs of the parties, the accustomed standard of living of the parties prior to their separation, the present employment income and other recurring earnings of the parties from any source, the income earning abilities of the parties, the separate and marital debt service obligations of the parties, those expenses reasonably necessary to support each of the parties, and each parties' respective legal obligation to support any other person.
 

 But the trial court did not simply recite that it had considered this list of factors; it made findings of fact regarding the relevant factors.
 
 See
 
 N.C. Gen. Stat. § 50A-16.3(b-c) (2015) (noting findings of fact are shall be made for factors for which evidence was presented). Other findings in the order, including findings we have not quoted in this opinion because they were not challenged by Husband, specifically address many of these factors in detail, including marital misconduct; the relative earnings and earning capacities of the parties; the duration of the marriage; the good health and ages of the parties; the standard of living established during the marriage; the relative assets and liabilities of the parties; and the relative needs of the parties. The trial court properly considered the required factors and set the duration of the alimony in its discretion. We discern no abuse of discretion in the trial court granting 10.5 years of alimony.
 
 See
 

 *434
 

 Hartsell v. Hartsell
 
 ,
 
 189 N.C. App. 65
 
 , 75,
 
 657 S.E.2d 724
 
 , 730 (2008) ("
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b) (2007) directs that the court shall exercise its discretion in determining the amount, duration, and manner of payment of alimony. The duration of the award may be for a specified or for an indefinite term. Decisions about the amount and duration of alimony are made in the trial court's discretion, and the court is not required to make findings about the weight and credibility it assigned to evidence before it." (citations and quotation marks omitted) ). This argument is overruled.
 

 III. Conclusion
 

 We conclude competent evidence supports the findings of fact and the trial court did not abuse its discretion in awarding alimony of $2,780 for a term of 126 months.
 

 AFFIRMED.
 

 Judge ZACHARY concurs.
 

 Judge MURPHY concurs in part and dissents in part in a separate opinion.
 

 MURPHY, Judge, concurs in part and dissents in part.
 

 *432
 
 I concur in the portions of the Majority's opinion concluding that the trial court's findings of fact in the alimony order relating to (1) the foster children, (2) Husband's retirement income, (3) the parties' reasonable expenses and relative financial needs, and (4) Husband's monthly income surplus were supported by competent evidence. However, I respectfully dissent from the Majority's determination that the trial court's finding of fact of Husband's marital misconduct was supported by competent evidence and that the trial court made adequate findings of fact as to the duration of alimony.
 

 A. Marital Misconduct
 

 Regarding Husband's marital misconduct, the trial court made the following findings of fact:
 

 A. Plaintiff engaged in acts of illicit sexual behavior prior to the parties' separation. Plaintiff had the inclination and opportunity and had in fact committed adultery with [Sue Smith].
 

 B. Prior to the parties' separation, Plaintiff offered indignities that rendered Defendant's condition intolerable and her life burdensome, due to him acting on his adulterous relationship and Defendant becoming aware of that adultery prior to separation. Specifically, Defendant found Plaintiff kissing [Sue Smith] in a parked vehicle in Greenville prior to separation.
 

 Marital misconduct of either spouse is a relevant factor the trial court must consider in determining the amount, duration, and manner of alimony payment. N.C.G.S. § 50-16.3A(b)(1) (2017). There are several enumerated acts which constitute "marital misconduct" within the meaning of N.C.G.S. § 50-16.3A(b)(1), including illicit sexual behavior and "[i]ndignities rendering the condition of the other spouse intolerable and life burdensome." N.C.G.S. § 50-16.1A(3) (2017).
 

 1. Illicit Sexual Behavior
 

 Illicit sexual behavior is defined as "acts of sexual or deviate sexual intercourse, deviate sexual acts, or sexual acts defined in
 
 *433
 
 G.S. 14-27.20(4), voluntarily engaged in by a spouse with someone other than the other spouse." N.C.G.S. § 50-16.1A(3)(a) (2017). As the Majority notes, direct evidence is not required for a spouse to show illicit sexual behavior. "Where adultery is sought to be proved by circumstantial evidence, resort to the opportunity and inclination doctrine is usually made. Under this doctrine, adultery is presumed if the following can be shown: (1) the adulterous disposition, or inclination, of the parties;
 
 and
 
 (2) the opportunity created to satisfy their mutual adulterous inclinations."
 
 In re Estate of Trogdon
 
 ,
 
 330 N.C. 143
 
 , 148,
 
 409 S.E.2d 897
 
 , 900 (1991) (internal citations omitted) (emphasis added). Inclination and opportunity are to be considered separately, and a showing of inclination will not remedy a failure to show sufficient opportunity.
 
 See
 

 Coachman v. Gould
 
 ,
 
 122 N.C. App. 443
 
 , 447,
 
 470 S.E.2d 560
 
 , 563-64 (1996). The Majority does not clearly delineate this distinction, which is crucial to the determination of whether there was competent evidence to
 
 *435
 
 support a finding of illicit sexual behavior in this case.
 

 The evidence introduced at trial tended to show that a private investigator ("PI") hired by Wife observed Husband's vehicle in the parking lot of a mall on 6 August 2014. While conducting surveillance on Husband's vehicle, the PI witnessed Husband arrive in another vehicle with Sue Smith and lean over to kiss her. Husband admitted that, prior to the kiss, he and Sue Smith "went to the theater [and] got something to eat[,]" after which he left to work a 12-hour shift. The only other interaction between Husband and Sue Smith introduced as evidence of illicit sexual behavior occurred after separation, when the PI witnessed Husband and Sue Smith's vehicles in a Holiday Inn parking lot overnight.
 

 I agree with the Majority that, based on the kiss in the parking lot on 6 August, it was not an abuse of discretion for the trial court to find that Husband had the inclination to engage in sexual intercourse or sexual acts with Sue Smith within the meaning of N.C.G.S. § 50-16.1A(3)(a). However, this is not competent evidence to support a finding that Husband had the opportunity to engage in sexual intercourse or acts. Our caselaw has held that car rides and kisses in public do not demonstrate specific opportunities for sexual intercourse or acts. In
 
 Coachman v. Gould
 
 , we held that "telephone calls and a car ride are not the type of 'opportunities' for sexual intercourse intended under the
 
 Trogdon
 
 analysis."
 
 122 N.C. App. at 447
 
 ,
 
 470 S.E.2d at 563
 
 . We specifically noted that the "only evidence of ... social contact" between the wife and her alleged lover was the husband finding his wife leaving with the alleged lover in an automobile.
 
 Id.
 
 at 445,
 
 470 S.E.2d at 562
 
 . Additionally, in
 
 Oakley v. Oakley
 
 ,
 
 54 N.C. App. 161
 
 ,
 
 282 S.E.2d 589
 
 (1981), we held that "evidence
 
 *434
 
 hardly establishes a case for adultery" where a spouse and his or her alleged lover "were seen together on occasion" and "once kissed ... on the cheek."
 
 Id
 
 . at 163,
 
 282 S.E.2d at 590
 
 . The evidence presented here that Husband rode in a vehicle with Sue Smith and the two shared a kiss in public falls within our caselaw holding similar evidence insufficient to show opportunity.
 

 Wife and the Majority contend additional pre-separation evidence from which opportunity could be inferred was shown through her testimony that Husband did not come home from work "one night" in July 2014. However, when asked about that night, Wife could not remember which night it was.
 
 See generally
 

 Coachman
 
 ,
 
 122 N.C. App. at 445
 
 ,
 
 470 S.E.2d at 562
 
 ("Plaintiff was unable to establish the date on which this purported rendezvous occurred ...."). Husband also later testified that he was working nights at that time in 2014. This "amounts to no more than mere conjecture" of opportunity and not competent evidence of such.
 
 Id
 
 . at 447,
 
 470 S.E.2d at 563
 
 .
 

 The evidence that Husband and Sue Smith's vehicles were in the parking lot of a hotel overnight serves only a corroborative purpose, as they occurred after the date of Husband and Wife's separation. N.C.G.S. § 50-16.3A(b)(1) ("Nothing herein shall prevent a court from considering incidents of post date-of-separation marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation.") Thus, this evidence is not to be used independently as evidence that Husband had an opportunity to engage in sexual intercourse or acts with Sue Smith. In order for this evidence to be considered as corroborative, there must be
 
 independent pre-separation evidence
 
 for it to corroborate, which is lacking here. Evidence of a car ride in a public place is insufficient to show opportunity. The Majority fails to show any other pre-separation evidence from which the trial court could find opportunity. Accordingly, there was not competent evidence to support the trial court's finding of illicit sexual behavior.
 

 2. Indignities
 

 "Our courts have declined to specifically define 'indignities,' preferring instead to examine the facts on a case by case basis. Indignities consist of a course of conduct or repeated treatment over a period of time including behavior such as unmerited reproach, studied neglect, abusive language, and other manifestations of settled hate and
 
 *436
 
 estrangement."
 
 Evans v. Evans
 
 ,
 
 169 N.C. App. 358
 
 , 363-64,
 
 610 S.E.2d 264
 
 , 269 (2005). Indeed, the repeated nature of the indignities is the fundamental
 
 *435
 
 characteristic of indignities, and we have found error where indignities were found based on one occasion or act.
 
 See
 

 Traywick v. Traywick
 
 ,
 
 28 N.C. App. 291
 
 , 295,
 
 221 S.E.2d 85
 
 , 88 (1976).
 

 The trial court did not base its finding of indignities on a course of conduct or repeated treatment over a period of time. Rather, it based its finding of indignities on one incident: "
 
 Specifically
 
 , Defendant found Plaintiff kissing [Sue Smith] in a parked vehicle in Greenville prior to separation." (emphasis added). While unfortunate for the parties involved, this
 
 one act
 
 is insufficient to support a finding of indignities, as it is not a course of conduct or repeated treatment that would render the condition of Wife intolerable and her life burdensome. The trial court therefore abused its discretion in finding that Husband offered indignit
 
 ies
 
 .
 

 B. Alimony Duration
 

 While I concur with the Majority's determination that competent evidence supported the trial court's finding that Husband had the ability to pay alimony, the trial court did not make made adequate findings to support the duration of its alimony award.
 

 The trial court is to "exercise its discretion in determining the amount, duration, and manner of payment of alimony. The duration of the award may be for a specified or for an indefinite term." N.C.G.S § 50-16.3A(b) (2017). "Decisions about the amount and duration of alimony are made in the trial court's discretion, and the court is not required to make findings about the weight and credibility it assigned to evidence before it."
 
 Hartsell v. Hartsell
 
 ,
 
 189 N.C. App. 65
 
 , 75,
 
 657 S.E.2d 724
 
 , 730 (2008). However, when awarding alimony, trial courts are required to "set forth the reasons for the amount of the alimony award, its duration, and manner of payment."
 
 Fitzgerald v. Fitzgerald
 
 ,
 
 161 N.C. App. 414
 
 , 421,
 
 588 S.E.2d 517
 
 , 522 (2003). In
 
 Squires v. Squires
 
 , we remanded "for further findings of fact concerning the duration of the alimony award" where the trial court did not make any findings regarding the reason for the duration it imposed.
 
 Squires v. Squires
 
 ,
 
 178 N.C. App. 251
 
 , 264,
 
 631 S.E.2d 156
 
 , 163 (2006).
 

 While the Majority is correct that the determination of the duration of the payment of alimony is within the discretion of the trial court, this discretion does not free the trial court from its duty to make findings regarding the basis for the duration set. The trial court made no such finding to explain its rationale for the duration of the award. Accordingly, our caselaw "mandate[s] that we remand for further findings of fact regarding the basis for the amount and duration of the alimony award ...."
 
 Hartsell
 
 ,
 
 189 N.C. App. at 76-77
 
 ,
 
 657 S.E.2d at 731
 
 .
 

 *436
 

 C. Conclusion
 

 Under these facts, there was not competent evidence to support a finding that Husband committed acts of marital misconduct. Because the trial court considered the marital misconduct in its determination of the amount, duration, and manner of alimony payment and was required to order alimony upon its finding of Husband's illicit sexual behavior, I would remand the trial court's order for a new hearing on alimony with the additional instruction, if alimony is still ordered, to make adequate findings regarding the duration of the award. I respectfully dissent.
 

 [1]
 

 We have used a pseudonym to protect the privacy of the woman.
 

 [2]
 

 In addition to the "relative needs of the spouses," North Carolina General Statute § 50-16.3A(b) also requires the trial court to consider "[t]he relative earnings and earning capacities of the spouses;" "[t]he relative education of the spouses[;]" and "[t]he relative assets and liabilities of the spouses and the relative debt service requirements of the spouses[.]"
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b) (2015).