IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-28

Filed: 31 December 2020

Orange County, No. 16 CVD 1322

VERED MADAR, Plaintiff,

v.

GIL MADAR, Defendant.

Appeal by defendant from judgment entered 13 August 2019 by Judge Sherri T. Murrell in Orange County District Court. Heard in the Court of Appeals 8 September 2020.

*Chapel Hill Family Law, by Brian C. Johnston, for plaintiff-appellee.*

*Tharrington Smith, LLP, by Steve Mansbery and Jeffrey R. Russell, for defendant-appellant.*

BRYANT, Judge.

Defendant Gil Madar appeals from a trial court's order for child support and alimony ("2019 Order") wherein the trial court awarded alimony to plaintiff Vereo Madar and the parties were ordered to share responsibilities related to their son's treatment. Where the trial court correctly determined that plaintiff was a dependent spouse and thus entitled to alimony, we affirm the trial court's ruling. Where the trial court provided no explanation to support the amount and duration of its alimony award, we remand this matter for further findings on the amount and duration of its

alimony award. Where the trial court correctly determined the parties' child support obligations, we affirm the trial court's rulings. Where the trial court failed to address defendant's claim for reimbursement of residential treatment enrollment costs associated with the parties' minor child, we reverse and remand for additional findings.

On 16 September 1994, plaintiff and defendant married in Israel and had three children—all sons—over the course of their marriage. Each of the children suffered severe emotional issues at various times since 2013. Mental health issues and treatment regarding the youngest child (hereinafter "the minor child") became the central part of the parties' litigation and court orders, including the 2019 Order at issue on appeal. When the 2019 Order was entered, the two oldest children had reached the age of majority.

In August 2008, the parties and their three children relocated to the United States and purchased a home in Chapel Hill. They resided in the home together until they separated on 10 September 2016. During the marriage, the parties acquired an E-Trade investment account, which had a date-of-separation balance of $273,505; a 401(k) retirement account in defendant's name, which had a date-of-separation balance of $214,109.96; and a money market account, which had a date-of-separation balance of $95,254.24.

On 30 September 2016, plaintiff filed a complaint seeking child custody, child support, postseparation support, alimony, attorney's fees, and equitable distribution. Defendant filed an answer and counterclaims for child custody and equitable distribution. Pursuant to a resolution of the parties' claims for equitable distribution, plaintiff received the home in Chapel Hill, and defendant received the E-Trade Investment account. The parties equally divided the sale proceeds of a condominium they shared in Israel, the money from defendant's 401(k) retirement account, and the money market account.

In 2016, the minor child began having severe emotional issues. Plaintiff, who was last employed full-time in 2013, was his primary caregiver.

On 8 February 2017, the trial court entered an order for temporary child support and postseparation support. The order established defendant's temporary child support obligation at $2,014.00 per month and his postseparation support obligation at $2,220.00 per month, based upon his monthly income at that time of $12,706.00. Defendant was ordered to pay all unreimbursed medical expenses for the minor child.

In March 2017, the minor child was hospitalized for inpatient care at UNC School of Medicine due to his mental health issues. Approximately a year later, on 20 March 2018, the trial court ordered psychological evaluations of plaintiff and

defendant to determine their fitness as custodial parents. Plaintiff was ordered to participate in reunification therapy and personal therapy.

On 27 August 2018, the parties attended a hearing to determine temporary placement for the minor child, and the trial court ordered the parties to enroll him in an intensive therapeutic program at New Vision Wilderness Therapy in Wisconsin (hereinafter referred to as "New Vision Wisconsin"). The trial court also ordered the parties to equally divide the program treatment costs. On 29 November 2018, the minor child was transferred to another treatment facility in Utah: Telos Residential Treatment Program (hereinafter referred to as "Telos"). The parties were ordered to comply with the treatment requirements at Telos, which included following a visitation schedule and participating in family therapy. The parties incurred expenses related to the minor child's enrollment at Telos. The minor child was still residing at Telos when the trial court entered the 2019 Order.

In 2019, the parties appeared for a hearing on the matter of child support and alimony before the Honorable Sherri T. Murrell, District Court Judge presiding. Following the hearing, the trial court entered the 2019 Order. Defendant appeals.

---

On appeal, defendant argues the trial court erred by (I) finding that plaintiff was entitled to an award of alimony and determining the amount defendant should pay, (II) concluding both parties have a duty to provide child support for the minor

child's needs and failing to apply the proper guidelines for its child support determination, (III) ordering defendant to pay all of the minor child's unreimbursed medical expenses, and (IV) failing to address defendant's claim for reimbursement of the minor child's cost of enrollment at Telos.

*I*

Defendant first appeals from the portion of the order awarding plaintiff alimony. Specifically, defendant contends the trial court erred in its findings of fact that plaintiff was a dependent spouse and defendant a supporting spouse and concluding plaintiff was entitled to receive alimony. Additionally, defendant argues the trial court abused its discretion by ordering defendant to pay alimony without making the necessary findings to support the award.

"As our statutes outline, alimony is comprised of two separate inquiries." *Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000). The trial court's first determination as to whether a party is *entitled* to alimony is reviewed *de novo. Id.* If the trial court determines that a party is entitled to alimony, then a second determination is made as to the amount of alimony to be awarded, which we review for abuse of discretion. *Id.*

> Entitlement to alimony is governed by N.C. Gen. Stat. § 50-16.3A(a) . . . . [A] party is entitled to alimony if three requirements are satisfied: (1) [] [the] party [seeking alimony] is a dependent spouse; (2) the other party is a supporting spouse; and (3) an award of alimony would be equitable under all the relevant factors.

*Id*. We address each argument in order.

*Dependent Spouse*

By statute, a "dependent spouse" is one "who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." N.C. Gen. Stat. § 50-16.1A(2) (2019).

> A spouse is 'actually substantially dependent' if he or she is currently unable to meet his or her own maintenance and support. A spouse is 'substantially in need of maintenance' if he or she will be unable to meet his or her needs in the future, even if he or she is currently meeting those needs.

*Barrett*, 140 N.C. App. at 371, 536 S.E.2d at 644–45 (internal citation omitted). "[T]o properly find a spouse dependent[,] the court need only find that the spouse's reasonable monthly expenses exceed her monthly income and that the party has no other means with which to meet those expenses." *Beaman v. Beaman*, 77 N.C. App. 717, 723, 336 S.E.2d 129, 132 (1985).

In the instant case, the trial court made the following findings of fact:

> 46. Throughout their time as a married couple living in Israel, [p]laintiff earned substantially less than [d]efendant, receiving only a modest stipend during the approximately nine years while she was working on her Masters and Ph.D.
>
> . . . .
>
> 48. Throughout their lives, [p]laintiff was the primary caretaker of the parties' three sons, maintaining primary

responsibility for overseeing the boys' health, development, education, and general welfare.

. . . .

52. In August 2008, [p]laintiff and [d]efendant and their three boys relocated to the United States for [p]laintiff's post-doc position. . . .

. . . .

58. Plaintiff's post-doc position . . . ended in 2009.

59. Following the end of her post-doc position . . . in 2009, [p]laintiff was unable to work for a period of approximately eighteen months due to work restrictions with her H4B visa.

60. In 2010, [p]laintiff began working at UNC in a grant-funded position.

61. The grant funding for [p]laintiff's position at UNC ended in 2013, and [p]laintiff's position at UNC was terminated at this time.[1]

. . . .

68. Plaintiff assumed primary responsibility for managing the boys' emotional issues and mental health needs, by, for example, transporting the boys to and from their many therapy appointments.

. . . .

71. As of the Hearing Dates, [p]laintiff's unemployment has not been willful or the product of bad faith.

---

[1] Although defendant contends on appeal that finding of fact 61 is not supported by the evidence, defendant concedes in his brief that plaintiff was terminated from her position at UNC and does not dispute that plaintiff had been unemployed since her termination. Plaintiff also concedes that her year of termination was in 2014, rather than 2013.

. . . .

> 78. Plaintiff earned $0 in 2018; $0 in 2017; $4,800 in 2016; $0 in 2015; $6,750 in 2014; and $40,500 in 2013.

. . . .

> 91. As of the Hearing Dates, [p]laintiff's reasonable fixed monthly expenses totaled $2,012, and [p]laintiff's reasonable individual monthly expenses totaled $1,866, for total reasonable monthly expenses of $3,878.

Here, the trial court's findings of fact demonstrate that prior to the parties' separation and at the time of the hearing, plaintiff was unable to earn sufficient income to support her reasonable needs. As defendant does not except to most of the findings of fact, those findings are presumed to be supported by competent evidence and are binding on appeal. *Hall v. Hall*, 65 N.C. App. 797, 799, 310 S.E.2d 378, 380 (1984). Plaintiff's reasonable monthly expenses, which totaled $3,878, contributed to a deficit because she did not have monthly income due to her unemployment. Moreover, no evidence was presented as to any bad faith on plaintiff's part. Thus, the findings of fact were sufficient to support the trial court's order that plaintiff was a dependent spouse.

Conversely, defendant does challenge some of the trial court's findings of fact——also addressing plaintiff's dependency—arguing the findings were not supported by competent evidence:

> 63. With the loss of her job at UNC, [p]laintiff turned much of her attention towards tending to [childcare] needs.

. . . .

70. Plaintiff has been diagnosed with Post Traumatic Stress Disorder

. . . .

81. Plaintiff was unable to set aside any funds for her retirement during the parties' separation.

. . . .

85. As of November 5, 2018, [p]laintiff had $45.40 remaining from her aforementioned one-half share of the parties' money market account.

. . . .

87. As of November 20, 2018, [p]laintiff had . . . approximately $30,000, remaining from her aforementioned share of the proceeds from the sale of the [condo in Israel].

We note that defendant's challenge to findings of fact 63, 70, and 81 appear to reference plaintiff's testimony at trial which was not included in the record.[2]

"The unavailability of a verbatim transcript does not automatically constitute error. . . . [A] party must demonstrate that the missing recorded evidence resulted in prejudice." *State v. Quick*, 179 N.C. App. 647, 651, 634 S.E.2d 915, 918 (2006).

> [O]ur Supreme Court has held that the lack of a transcript does not prejudice the defendant when alternatives–such as a narrative of testimonial evidence compiled pursuant to Rule 9(c)(1) of the North Carolina Rules of Appellate Procedure–"are available that would fulfill the same

---

[2] Part of the transcript from the hearing is unavailable due to no fault of either party.

functions as a transcript and provide the defendant with a meaningful appeal."

*State v. Hobbs*, 190 N.C. App. 183, 186, 660 S.E.2d 168, 170 (2008) (quoting *State v. Lawrence*, 352 N.C. 1, 16, 530 S.E.2d 807, 817 (2000)). "Any dispute regarding the accuracy of a submitted narration of the evidence can be resolved by the trial court settling the record on appeal. . . . Overall, a record must have the evidence necessary for an understanding of all errors assigned." *Quick*, 179 N.C. App. at 651, 634 S.E.2d at 918.

Here, the trial court made the requisite findings of fact addressing plaintiff's mental health condition, her work history, and her financial status based upon the testimony presented at trial. The proposed record on appeal, submitted by counsel for defendant, included a narration of the missing evidence stating the following:

> Plaintiff was called to testify. . . [and] [] was the only witness who testified that day. Plaintiff's testimony consisted largely of background information about the parties and their children. Plaintiff testified about the parties' date of marriage, date of separation, the children's names and dates of birth, her education and work history, her mental health condition, [d]efendant's work background, the parties' living arrangements in Israel, their ability to save money while living in Israel, and the children's medical, emotional, and mental health issues.

The narration of evidence clearly referenced the missing testimony, and we find the narration was an adequate alternative to a verbatim transcript. *See In re Shackleford*, 248 N.C. App. 357, 362, 789 S.E.2d 15, 19 (2016) ("[I]n virtually all of the cases in which we have held that an adequate alternative to a verbatim transcript

existed, the transcript of the proceeding at issue was only *partially* incomplete, and any gaps therein were capable of being filled."); *see also Hobbs*, 190 N.C. App. at 187–88, 660 S.E.2d at 171 ("Although our Courts have declined to find prejudice in cases in which a transcript is unavailable for only a portion of the trial proceedings, [an] appeal [can be] hindered by the total unavailability of either a transcript or an acceptable alternative for a *majority* of defendant's trial.").

Defendant has not demonstrated nor does he assert an argument that he was prejudiced by the missing verbatim transcript. Based on the narration of evidence provided by defendant, the excepted findings of fact appear to be supported by plaintiff's testimony at trial. Absent evidence to the contrary, there is a presumption of regularity in the proceedings of a lower court. *See R & L Const. of Mt. Airy, LLC v. Diaz*, 240 N.C. App. 194, 197–98, 770 S.E.2d 698, 701 (2015); *State v. Bass*, 133 N.C. App. 646, 649, 516 S.E.2d 156, 158 (1999). Here, where the unavailability of the transcript is due to no fault of either party, there is no basis for this Court to set aside the presumption of regularity and strike the trial court's findings of fact. According, defendant's argument on these points is overruled.

Additionally, having reviewed the record, we conclude the trial court's findings of fact, including 85 and 87, were supported by competent evidence, and thus, support the trial court's determination that plaintiff is a dependent spouse under N.C.G.S. § 50-16.1A(2).

*Supporting Spouse*

N.C. Gen. Stat. § 50-16.1A(5) provides that " '[s]upporting spouse' means a spouse, whether husband or wife, upon whom the other spouse is actually substantially dependent for maintenance and support or from whom such spouse is substantially in need of maintenance and support." N.C.G.S. § 50-16.3A(5). While "evidence one spouse is dependent does not necessarily infer the other spouse is supporting," *Williams v. Williams*, 299 N.C. 174, 186, 261 S.E.2d 849, 857 (1980), this Court has stated, "[a] surplus of income over expenses is sufficient in and of itself to warrant a supporting spouse classification." *Barrett*, 140 N.C. App. at 373, 536 S.E.2d at 645.

Here, the trial court found that defendant's net monthly income was $5,910.00 per month, which net monthly income included a monthly 401(k) contribution of $960.69, and his total reasonable monthly expenses were $3,729; yielding a monthly surplus of $2,181. However, defendant challenges the trial court's finding of fact regarding his monthly expenses, arguing the finding was not supported by the evidence. We disagree.

Prior to the hearing, defendant submitted an affidavit of financial standing indicating his fixed monthly expenses and individual monthly expenses; stating that his fixed monthly expenses were $3,922, which included expenses for a parenting coordinator and education planner for the minor child totaling $1,556. Defendant

also stated that his individual monthly expenses were $9,613, which included $8,250 for expenses related to the minor child's enrollment at Telos. The trial court, using defendant's affidavit, did not include in its calculation, expenses related to the minor child's enrollment at Telos, the parenting coordinator, or the education planner. Similarly, the trial court also did not include those expenses in plaintiff's monthly expenses when finding plaintiff to be a dependent spouse. Absent consideration of the expenses associated with Telos, the evidence supports the trial court's finding that defendant's "reasonable fixed monthly expenses totaled $2,366," and his "reasonable individual monthly expenses totaled $1,363, for total reasonable monthly expenses of $3,729."

Moreover, the trial court also made several unchallenged findings of facts as to defendant's income and expenses:

> 72. Defendant lost his job at Qualcomm in August 2018 as a result of corporate restructuring.
>
> 73. In August 2018, [d]efendant received a gross vacation payout in the amount of $21,414.75 in his final paycheck from Qualcomm.
>
> 74. Defendant earned a total of $131,025.81 from Qualcomm in 2018 through August 24.
>
> 75. Additionally, in September 2018, [d]efendant received a one-time gross severance payment from Qualcomm in the amount of $83,556.94

76.    Defendant earned an additional $24,326 from his employment with Channel One in 2018, for total earnings of $238,907 in 2018.

77.  Defendant earned $196,176 in 2017; $178,100 in 2016; $173,302 in 2015; $341,883 in 2014; and $208,805 in 2013.

. . . .

79.    Plaintiff and [d]efendant were able to save for retirement during their marriage; specifically, in 2013, [d]efendant contributed $13,125 to his 401(k); in 2014, [d]efendant contributed $13,125 to his 401(k); in 2015, [d]efendant contributed $13,533.08 to his 401(k) and $4,466.92 to his Roth 401(k); and, in 2016, [d]efendant contributed $13,594.56 to his 401(k) and $5,151.80 to his Roth 401(k).

80.    Following the parties' separation, [d]efendant continued to save for retirement; specifically, in 2017, [d]efendant contributed $15,869.84 to his 401(k) and $1,639.44 to his Roth 401(k); and, in 2018, [d]efendant contributed $11,679.06 to his Qualcomm 401(k) and $1,769.24 to his Channel One 401(k).

Based on these findings, defendant's income-expenses surplus adequately supports the trial court's determination that defendant is a supporting spouse.

*Alimony Award*

The amount of alimony to be awarded is within the trial judge's sound discretion and is not reviewable on appeal absent a manifest abuse of discretion. *Id.* at 371, 536 S.E.2d at 644.

N.C. Gen. Stat. § 50-16.3A, which governs alimony awards, states, in pertinent part:

> The court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors. . .

N.C.G.S. § 50-16.3A(a).

> [I]n determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including, *inter alia*, the following: marital misconduct of either spouse; the relative earnings and earning capacities of the spouses; the ages of the spouses; the amount and sources of earned and unearned income of both spouses; the duration of the marriage; the extent to which the earning power, expenses, or financial obligations of a spouse are affected by the spouse's serving as custodian of a minor child; the standard of living of the spouses during the marriage; the assets, liabilities, and debt service requirements of the spouses, including legal obligations of support; and the relative needs of the spouses.

*Hartsell v. Hartsell*, 189 N.C. App. 65, 69, 657 S.E.2d 724, 727 (2008). The parties' needs and expenses for purposes of computing alimony should be measured in light of their accustomed standard of living during the marriage. *Barrett*, 140 N.C. App. at 372, 536 S.E.2d at 645. "While the court must consider the needs of the spouse seeking alimony in the context of the family unit's accustomed standard of living, it also must determine that the supporting spouse has the financial capacity to provide the support needed therefor." *Whedon v. Whedon*, 58 N.C. App. 524, 527, 294 S.E.2d 29, 31 (1982).

Here, as discussed *supra*, the trial court considered all the relevant factors and made findings of fact addressing, *inter alia*, each party's earning capacity, respective

needs and expenses, and the accustomed standard of living during their marriage. In the order, the trial court found, based on all the evidence presented, that "[d]efendant ha[d] the present ability to pay monthly alimony to [p]laintiff in the amount of $2,395, beginning February 1, 2019, and continuing for a period of eight years and seven months thereafter." However, defendant argues the trial court failed to make the necessary findings setting forth its reasoning for the amount and duration of the alimony award. We agree.

While the trial court found that defendant had the ability to pay $2,395, the order did not expressly include findings to support its rationale for awarding plaintiff that specific amount. Additionally, the trial court provided no explanation to support the duration of its alimony award. Thus, we must remand this matter to the trial court for further findings on the trial court's rationale for the amount and duration of its alimony award. *See* N.C.G.S. § 50-16.3A(c) (stating that the trial court "*shall* set forth the reasons for its award or denial of alimony and*, if making an award, the reasons for its amount, duration, and manner of payment*." (emphasis added)); *see also Wise v. Wise*, 264 N.C. App. 735, 749, 826 S.E.2d 788, 798 (2019); *Hartsell,* 189 N.C. App. at 76, 657 S.E.2d at 730.

*II*

Defendant next appeals from the trial court's child support determination. Defendant argues the trial court erred by concluding that both parties have a duty to provide support to their minor child for his expenses relating to Telos. We disagree.

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Mason v. Erwin*, 157 N.C. App. 284, 287, 579 S.E.2d 120, 122 (2003) (citation and quotation marks omitted). "To support such a reversal, an appellant must show that the trial court's actions were manifestly unsupported by reason." *State v. Williams*, 163 N.C. App. 353, 356, 593 S.E.2d 123, 126 (2004).

N.C. Gen. Stat. § 50-13.4(c) authorizes the trial court to order a child support award

> in such amount as to meet the reasonable needs of the child
> for health, education, and maintenance, having due regard
> to the estates, earnings, conditions, accustomed standard
> of living of the child and the parties, the child care and
> homemaker contributions of each party, and other facts of
> the particular case.

N.C.G.S. § 50-13.4(c) (2019). Generally, both parents have an equal duty to provide support for their children. *See Plott v. Plott*, 313 N.C. 63, 68, 326 S.E.2d 863, 867 (1985) ("Today, the equal duty of both parents to support their children is the rule."); *see also* N.C. Gen. Stat. § 50-13.4(b) ("In the absence of pleading and proof that the circumstances otherwise warrant, the father and mother shall be primarily liable for

the support of a minor child."). However, while parents have an equal duty to support their children, "the equal duty to support does not necessarily mean the amount of child support is to be automatically divided equally between the parties. Rather, the amount of each parent's obligation varies in accordance with their respective financial resources." *Plott*, 313 N.C. at 68, 326 S.E.2d at 867.

"Child support payments are ordinarily determined based on a party's actual income at the time the award is made." *Williams*, 163 N.C. App. at 356, 593 S.E.2d at 126. "In determining the amount of a child support obligation, [t]he judge must evaluate the circumstances of each family and also consider certain statutory requirements[.]" *Bowers v. Bowers*, 141 N.C. App. 729, 731, 541 S.E.2d 508, 509 (2001) (alterations in original) (citation and quotation marks omitted).

In the instant case, the trial court made the following findings of fact relating to the minor child's reasonable needs and child care:

> 23. Plaintiff and [d]efendant each acknowledged that it was in [the minor child]'s best interest to be enrolled at Telos and that [the minor child] has benefitted substantially from his time at Telos.
>
> 24. The expenses incurred for [the minor child]'s benefit in connection with his enrollment at New Vision and Telos, as well as his transportation expenses incurred with Right Direction, psychological evaluation expenses incurred [], and [p]laintiff's Telos Expenses, are extraordinary expenses, as defined by the North Carolina Child Support Guidelines.
>
> . . . .

97. Plaintiff has the present ability to pay 40% of the Dr. KKJ [e]xpenses, and [d]efendant has the present ability to pay 60% of the Dr. KKL['s psychological evaluation e]xpenses.

98. Plaintiff has the present ability to pay 50% of the Dr. Zeisz [e]xpenses, and [d]efendant has the present ability to pay 50% of the Dr. KKL [e]xpenses.

99. Plaintiff has the present ability to pay 40% of the expenses associated with [minor child]'s enrollment at Telos, including expense account expenses, and [d]efendant has the present ability to pay 60% of expenses associated with [minor child]s enrollment at Telos, including expense account expenses.

100. Plaintiff has the present ability to pay 40% of the Right Direction [e]xpenses for Telos, and [d]efendant has the present ability to pay 60% of the Right Direction [e]xpenses for Telos.

101. Plaintiff has the present ability to pay 40% of [p]laintiff's Telos [e]xpenses, and [d]efendant has the present ability to pay 60% [p]laintiff's Telos [e]xpenses.

We note defendant does not take exception to the findings made by the trial court regarding his financial status at the time of the hearing in 2019. The trial court found that after the parties had separated, defendant earned $196,176 in 2017, and $238,907 in 2018.[3] In addition to defendant's ability to make substantial contributions to his retirement accounts in 2017 and 2018, the trial court found that defendant had assets in an E-Trade investment account with a date-of-separation

---

[3] The hearing for child support and alimony took place on 2 January, 8 February, and 20 March 2019.

balance of $273,505, one-half interest in a Qualcomm 401(k) account with a date-of-separation balance of $214,109.96, and one-half interest in a money market account with a date-of-separation balance of $95,254.24. Additionally, defendant received $238,000 in 2018 from the sale of the parties' condominium in Israel. At the time of the hearing, defendant had not spent any of the proceeds from the condominium sale. Those findings, which are binding on this Court, support the finding of fact and conclusion of law that defendant had the ability to pay child support.

Defendant also contends the trial court deviated from the Child Support Guidelines because the trial court concluded that defendant "ha[d] the ability to pay the child support ordered. The trial court did not make any findings of fact to support this conclusion." We also reject this argument.

Although N.C. Gen. Stat. § 50-13.4 mandates a trial court use the presumptive guidelines when determining the amount of child support payments, the North Carolina Child Support Guidelines (the "Guidelines"), effective 1 January 2019, provide that

> extraordinary child-related expenses (including (1) expenses related to special or private elementary or secondary schools to meet a child's particular education needs, and (2) expenses for transporting the child between the parent's homes) *may be added to the basic child support obligation and ordered paid by the parents in proportion to their respective incomes if the court determines the expenses are reasonable, necessary, and in the child's best interest.*

N.C. Child Support Guidelines 2019 Ann. R. N.C. 5 (emphasis added).

> [D]etermination of what constitutes an extraordinary expense is . . . within the discretion of the trial court[.] Based upon the Guideline language above, the court may, in its discretion, make adjustments [in the Guideline amounts] for extraordinary expenses. However, incorporation of such adjustments into a child support award does not constitute deviation from the Guidelines, but rather is deemed a *discretionary adjustment* to the presumptive amounts set forth in the Guidelines. . . . [A]bsent a party's request for deviation, the trial court is not required to set forth findings of fact related to the child's needs and the non-custodial parent's ability to pay extraordinary expenses.

*Biggs v. Greer*, 136 N.C. App. 294, 298, 524 S.E.2d 577, 581–82 (2000) (alteration in original) (emphasis added) (internal citations and quotation marks omitted).

Here, the trial court's findings of fact regarding expenses related to the minor child's inpatient treatment, which included travel expenses and psychological evaluations, appropriately fall under the definition of extraordinary expenses in the Guidelines. The court properly exercised its discretion and determined that plaintiff had the ability to pay 40% of the minor's expenses and defendant had the ability to pay 60% of the expenses.[4] *Ferguson v. Ferguson*, 238 N.C. App. 257, 265, 768 S.E.2d 30, 36 (2014) ("The trial court is vested with discretion to make adjustments to the guideline amounts for extraordinary expenses, and the determination of what constitutes such an expense is likewise within its sound discretion." (citation and quotation marks omitted)).

---

[4] Prior to the trial court's order, the parties had already shared the responsibility of the minor child's expenses and made payments towards his treatment.

Contrary to defendant's assertion, the trial court was not required to make specific findings regarding the child's reasonable needs or the parents' ability to provide support as the court's "discretionary adjustment" did not constitute a deviation under the Guidelines. *See Greer*, 136 N.C. App. at 298, 524 S.E.2d at 582. In fact, the trial court's finding—that plaintiff and defendant should be obligated to pay extraordinary child care expenses in varying proportions to meet the minor child's needs—is consistent with the underlying assumption of the Guidelines that "child support is *a shared parental obligation*[.]" N.C. Child Support Guidelines 2019 Ann. R. N.C. 5 (emphasis added). We see nothing in the record to indicate that either party requested a deviation from the Guidelines.

Therefore, we hold the trial court did not abuse its discretion by ordering both parties to provide the above-referenced support to their minor child.

*III*

Defendant raises another argument regarding his child support obligation, contending the trial court erred by ordering him to pay all the minor child's unreimbursed/uninsured medical expenses. We disagree.

Typically, "uninsured medical and dental expenses are to be apportioned between the parties in the discretion of the trial court. In other words, any decision by the court in this regard must be upheld absent a showing that it is manifestly unsupported by reason." *Lawrence v. Tise*, 107 N.C. App. 140, 150, 419 S.E.2d 176,

183 (1992).  The Guidelines include a provision referring to uninsured medical or

dental expenses, stating:

> [t]he basic guideline support obligation includes $250 per child for the child's annual uninsured medical and/or dental expenses. . . .  [T]he court *may* order that uninsured health care costs in excess of $250 per year (including reasonable and necessary costs related to medical care, dental care, orthodontia, asthma treatments, physical therapy, treatment of chronic health problems, and counseling or psychiatric therapy for diagnosed mental disorders) incurred by a parent *be paid by either parent or both parents in such proportion as the court deems appropriate.*

N.C. Child Support Guidelines 2019 Ann. R. N.C. 5 (emphasis added).  We note the

Guidelines do not include mandatory language advising the trial court on the

allocation of uninsured expenses between the parties.  Instead, this Court has stated

that the trial court is vested with wide discretion in deciding the allocation of such

expenses on a child's behalf:

> [T]he Child Support Guidelines . . . include a generalized, cursory instruction concerning how the court 'may' structure the responsibility for these uninsured expenses [which] does not in any way alter the trial court's discretion to apportion these expenses, described and applied in *Tise*, 107 N.C. App. at 150, 419 S.E.2d at 183. . . . [T]he Child Support Guidelines neither require the trial courts to follow a certain formula nor prescribe what the trial courts 'should' or 'must' do in this regard[.] . . . Given the wide discretion afforded [to] our trial courts in matters concerning the allocation of uninsured medical or dental expenses, then, such decisions cannot be disturbed on appeal absent a manifest abuse of discretion.

*Holland v. Holland*, 169 N.C. App. 564, 571–72, 610 S.E.2d 231, 236–37 (2005).

Here, considering the disparity between the parties' respective incomes, we find the trial court's order requiring defendant to pay all medical expenses not covered by insurance on behalf of the minor child was not manifestly unsupported by reason so as to constitute an abuse of discretion. *See Roberts v. McAllister*, 174 N.C. App. 369, 381, 621 S.E.2d 191, 199 (2005) ("It is in the discretion of the trial court to determine a fair sharing arrangement for the uninsured medical expenses.").

We reject defendant's contention that there was no competent evidence presented to show what the minor child's expenses were and what they would cost defendant. In defendant's affidavit of financial standing [] submitted to the trial court, he included $433 for the minor child's "medical/dental bills not paid by insurance" in his total individual expense estimate. The court included this expense in its finding of defendant's reasonable individual expenses and determined that defendant had a surplus in income to enable him to afford those expenses if they occur. Accordingly, we affirm the trial court's ruling.

## IV

Defendant finally argues the trial court erred by failing to address his claim for reimbursement of the minor's cost of enrollment at Telos. We agree.

Here, defendant submitted evidence that he was charged the full amount of $5,250.00, relating to the minor child's enrollment costs in Telos on 30 October 2018. The trial court found that plaintiff had the ability to pay "40% of the expenses

associated with the minor child's enrollment at Telos." Thus, pursuant to the trial court's order, defendant contends plaintiff was required to reimburse him for 40% of this cost, totaling $2,100.

Given the lack of findings by the trial court on this issue, we are unable to discern from the record how or whether the trial court considered defendant's argument for reimbursement on his Telos's costs. Thus, we reverse and remand for additional findings as to defendant's claim for reimbursement.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judges ZACHARY and ARROWOOD concur.